①

A. CARGILE 45000-086

I AM GENUINELY GRATEFUL AND APPRECIATE THE OPPORTUNITY TO HAVE PARTICIPATED IN THE DREAM PROGRAM. I HAVE HAD SETBACKS, BUT I'VE ALSO MADE A LOT OF PROGRESS WHICH HAS MADE ME STRONGER AND BUILT MY CHARACTER. BOTH SET BACKS AND ANY PROGRESS HAVE LESSONS FOR MY FUTURE. WHAT FRUSTRATES ME IS I FEEL THE SENTENCING REPORTS ONLY REFLECT THE NEGATIVE ASPECTS OF MY INVOLVEMENT DURING MY TIME IN THE PROGRAM.

AFTER HAVING A LOT OF TIME TO REFLECT I REALIZED THAT DEEP IN THE BACK OF MY MIND I TOLD MYSELF I WOULD JUST GET THROUGH THE PROGRAM TO APPEASE THE COURT AND AVOID A FELONY CONVICTION. EVEN THOUGH I KNEW I WAS AN ADDICT, I AM AN ADDICT, I THOUGHT I STILL HAD CONTROL. I WOULDN'T ACCEPT THAT MAYBE SOMEBODY KNEW BETTER THAN ME AND THAT STUBBORNESS

**22**

TOOK ME AWAY FROM MYSELF AND MY VALUES. THAT STUBBORNESS WILL KILL ME IF I DON'T SURRENDER AND I ACCEPT THAT. I HAVE SURRENDERED AND I NO LONGER ALLOW MY DISEASE TO CONTROL ME.

I ACCEPT MY RESPONSIBILITY AND HAVE A DEEP FEELING OF REMORSE FOR MY ACTIONS, BOTH IN DREAM AND FOR THE OFFENSE COMMITED LONG AGO, AND UNDERSTAND THE NEED FOR REPERCUSSIONS. I CAN HONESTLY TELL YOU THAT THE PAST 2 MONTHS HAVE BEEN A LIVING HELL. I HAVE ONLY SPOKEN TO MY CHILDREN A HANDFUL OF TIMES FOR LESS THAN 5 MINUTES, LET ALONE SEE THEM. WHEN I'M OUT I TALK TO THEM DAILY AND SEE THEM SEVERAL TIMES A WEEK. BEING SEPERATED AND TORN FROM THEM IS KILLING ME EMOTIONALLY, MENTALLY AND PHYSICALLY. I HAVE WORKED TIRELESSLY TO REGAIN CUSTODY OF THEM. THEY ARE INNOCENT IN THIS AND NEED THEIR MOM. I

23

② 
A. CARGILE 45000-086

DON'T WANT THEM TO SUFFER ANY MORE BECAUSE I CANNOT BE THERE FOR THEM. THAT IS WHY I HAVE SPENT THE LAST 2 MONTHS THINKING ABOUT MY CHOICES, MY ACTIONS, MY DISEASE AND HOW ~~AAA~~ TO BE A STRONGER MUM AND PERSON. WHILE THE DECISION TO VOLUNTARILY TERMINATE FROM DREAM WAS VERY DIFFICULT, I NEEDED TO BE HONEST WITH MYSELF AND THE DREAM TEAM.

I HAVE STRUGGLED WITH MY COMMUNICATION SKILLS WITH PROBATION. I NOW REALIZE THIS ISN'T A PERSONAL ISSUE, BUT RATHER A PROFESSIONAL RELATIONSHIP, AND I UNDERSTAND AND I RESPECT THAT.

I DID CHOOSE TO KEEP MY RELATIONSHIP WITH ANGEL PRIVATE, WE ARE PRIVATE PEOPLE. BUT IN HINDSIGHT I REALIZE I SHOULD HAVE BEEN MORE OPEN ~~AAA~~ ABOUT IT. I HAD NOTHING TO HIDE. I JUST FELT THAT HE WAS BEING JUDGED AND BLAMED FOR MY SETBACKS AND THE WAS NOT THE CASE AT ALL, I THINK HE'S ALWAYS BEEN SUPPORTIVE.

24

When you love somebody, it's natural to guard and protect them and that's what I thought I was doing. When in truth, had I been open and honest about my life with probation, I believe they would have worked with me and respected my choices wanting only to be sure I was safe and in a supportive ~~relationship~~ environment for my recovery.

Staying out of prison and on supervision for several years I will work hard on my recovery, trust issues and communication. I realize I cannot use, that's not an option, and being on supervision will provide me with the structure and accountability I need for a longer period of time. I did well on pretrial supervision, obtaining no violations due to the fact I had stability; I had a house, FT

25

③
A. CARGILE 45000-086

employment and my kids who depended on me. I lost all of that in 1 day. Just a month into the Dream program when my ex, my children's dad, used my disease to obtain custody of our kids and our home after I had the confidence to finally end the unhealthy relationship. My world was turned upside down.

I now have the stability I so desperately needed to be successful on supervision, and I know I will succeed. I have FT employment, and with my husband, our own house to share with our children.

I again apologize to the Dream Team, Jennifer Van Flandern and my family for letting you all down. I am not proud of my mistakes and intend to stand by my actions. I only want to ~~have~~ live a normal life and be a sober mom to my children.

**26**



FACSIMILE TRANSMITTAL SHEET

TO: Patricia
FROM: Cory Bowling
COMPANY: Federal Public Defenders Office
DATE: 9-22-2017
FAX NUMBER: 206-553-0220
TOTAL NO. OF PAGES INCLUDING COVER: 1
PHONE NUMBER: NA
SENDER'S REFERENCE NUMBER: NA
RE: NA
YOUR REFERENCE NUMBER: NA

☒ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Amanda Cargile was my grounds keeper @ the, Villa 2 Apts. for a matter of months this 2017 season... I'm aware of her current situation facing incarceration, but I would love the chance to rehire, Amanda upon her release, should a position come back available... I found, Amanda to be very hard working person that showed attention to detail & was on time...

3451 Woburn St. Bellingham, WA 98226
PH 360.738.4720   FAX 360.738.4723

27

# Michelle Peterson Law, PLLC

1420 Fifth Ave., Suite 2200 • Seattle, WA 98101 • Phone: (206) 224-7618
E-Mail: michelle@michellepetersonlaw.com • URL: www.michellepetersonlaw.com

Date: September 22, 2017

VIA EMAIL

Jennifer Wellman
Federal Public Defender's Office (Sea)
West Lake Center Office Tower 1601
5th Ave Ste 700 Seattle, WA 98101
Jennifer_Wellman@fd.org

Re: Amanda Cargile

We represented Amanda Cargile when the father of her two children threatened to file a motion for contempt against her because she was unable to adhere to the requirements in the parenting plan upon her arrest and her entry into the DREAM program. From March 2016, when the motion to contempt was threatened, through January 2017, when the final parenting plan was entered, Ms. Cargile worked very hard to convince the father of her children and his lawyer that she should have partial custody of her children once she achieved sobriety and had a suitable place to live and care for the children.

The parenting plan takes into consideration Ms. Cargile's long-term problem with drugs and alcohol as well as the father's concerns with a relapse while Ms. Cargile is caring for the children. To address both concerns, the parenting plan sets forth a graduated residential schedule for Ms. Cargile's time with the children. The parenting plan is set to increase Ms. Cargile's residential time with the children every six months. After two years, Ms. Cargile will have 50/50 residential time with the children and joint decision making.

The Final Parenting Plan does not have a specific provision that addresses Ms. Cargile's withdrawal from DREAM. Her withdrawal from DREAM should not affect the parenting plan. For any violations of the Plan, Ms. Cargile cannot increase her residential time until she is back in compliance with the terms of the Plan. In order for Ms. Cargile to progress to the next stage of residential time, the Plan provides she must utilize 75% of her available visits for the previous three months and must provide a clean drug test to the children's father.

If Ms. Cargile is incarcerated, she will be unable to utilize 75% of her available visits and therefore will be unable to progress to the next residential stage until she is released and can begin using her visits again. Further, the Plan requires Ms. Cargile to have a residence in Bellingham with separate beds for each child. If incarcerated for a lengthy time, Ms. Cargile may lose her current housing and will have to find new housing once released which could be challenging.

We are unaware of any allegations that Ms. Cargile is anything other than a caring and attentive mother to her children. Losing residential time with her children while she is incarcerated will not only affect her ability to move to the next stage in the parenting plan but it will also cause a great deal of disruption in her children's lives. Based on past behavior, neither the father or Ms. Cargile's family are likely to make an effort to bring the children to visit Ms. Cargile while she is incarcerated.

Sincerely,

Michelle Peterson Law, PLLC

Michelle Peterson

**28**